# Stallings's Administrator *v.* Hinson.

*Action on Promissory Note, by Payee's Administrator against Maker*

1. *Examination of parties as witnesses ; exception as to actions by or against executors or administrators.* — In an action by an administratrix, on a promissory note payable to her intestate, the defendant cannot be allowed to testify that, in a conversation between him and the plaintiff about the note, which he demanded from her on the ground that it had been paid, he told her that he had paid it to a third person, *by the direction of the intestate, and had made one payment in his presence :* these declarations come within the statutory exception (Rev. Code, § 2704), that a party shall not be allowed to testify "as to any transaction with or statement by the testator or intestate," and the fact that the plaintiff had testified as to the same conversation, without objection, does not render the evidence competent.

2. *Same.* — In such action, the defence being that, by the direction of the intestate, the principal debtor had paid the note to a mercantile firm of which his co-defendant was a partner, and which had indemnified him against the suit, another partner in the firm, though not a party to the record, is within the spirit and meaning of said section 2704, and, consequently, is incompetent to testify "as to any transaction with or statement by the intestate."

3. *Declarations not admissible as part of res gestæ, or explanatory of possession.* — Where a widow called at a store, and demanded the portfolio of her deceased husband, which was locked, and contained valuable papers, a conversation between one of the partners in the store and his book-keeper, who had possession of the tportfolio, as to the propriety of delivering it to her when it contained a notewhich hey claimed, not having been in the presence of the widow, is no part of the *res gestæ* connected with the delivery, nor is it admissible as explanatory of their possession.

APPEAL from the Criminal Court of Butler.

Tried before the Hon. W. H. CRENSHAW.

[Stallings's Administrator *v.* Hinson.]

This action was brought by the appellant, as the administratrix of her deceased husband, Dr. Thomas D. Stallings, against Ira E. Hinson and Lewis Bear, and was founded on a promissory note for $338.50, made by said defendants, dated the 19th February, 1870, and payable to the order of said intestate on the 1st day of November next after date. The complaint also contained a count on an account stated. The defendants pleaded : 1st, payment ; 2d, the general issue, with leave to give any special matter in evidence ; and 3d, a special plea, which was sworn to, that the note was not the property of the estate of plaintiff's intestate, and the suit was not brought in the name of the party really interested ; and issue was joined on all these pleas, " with leave to the plaintiff to give in evidence whatever might be relevant under appropriate replications."

On the trial, as the bill of exceptions states, the plaintiff read in evidence the note sued on, and then testified in her own behalf, as follows : " The intestate was her husband. He died on the 16th November, 1870. He kept most of his valuable papers in a portfolio, with a lock and key to it. She usually kept said portfolio for him in a trunk at their house in the country, where they lived. When he went to Greenville, which was quite frequently, he generally took his portfolio and papers with him. Witness frequently examined the papers in the portfolio in her husband's lifetime, and saw therein the note now sued on, with a mortgage given by said Hinson, to secure it; and also other notes and mortgages, amounting in the aggregate to twelve or fifteen hundred dollars. On the morning of the day of his death her husband went to Greenville, and took said portfolio with him ; and he never came back alive, having been killed in Greenville in an altercation with another man. A few days after his death, witness rode in a buggy to Greenville, to the store of L. Bear & Co., and sent into the store for her husband's portfolio, which had his papers in it. The portfolio was brought and handed to her by Mr. Gandy, of the firm of L. Bear & Co., she remaining in the buggy in front of the store. The portfolio was locked when she received it from Mr. Gandy, and the key was in her possession, having been brought to her on the night of her husband's death. On examining the papers in the portfolio afterwards, she found in it the said note, with the mortgage given to secure its payment, and also the other papers of her husband. In reply to cross-interrogatories propounded by defendants, plaintiff further testified that on the day she got possession of said portfolio and papers, said defendant Hinson saw her and demanded the said note and mortgage, saying that he had paid the note in full ; that she asked him to whom had he paid it, and he replied, to Leo Frank, of the firm of L.

Bear & Co.; that she replied, ' he had done wrong to pay it there ; that she had the papers, and had not received any money; ' to which Hinson replied that her husband, before he died, had directed him to pay it to Leo Frank, for L. Bear & Co., and that he had made one payment on it before his death, with his knowledge, and had made the last payment soon after his death."

" Defendant Hinson was then introduced as a witness for the defendants, and testified that said note was given for money loaned to him by Dr. Stallings ; that the note and mortgage were written by Leo Frank, and were left with him, after they were executed, to have the mortgage proved and recorded ; that he had paid the note in full, $236 before the death of Dr. Stallings, and the balance of it ($102.50) within a few days after his death ; that these payments were made to said Leo Frank ; and that Dr. Stallings was present, or in the store of L. Bear & Co., when the first payment was made.    Plaintiff objected to said Hinson being allowed to state that the said intestate was present when said payment was made ; but the court overruled the objection, and allowed the statement to go to the jury, to which the plaintiff excepted.    Hinson was then asked to detail the whole of the conversation between himself and the plaintiff, as to which the plaintiff had testified, when he demanded said note and mortgage.    The plaintiff objected to the introduction of this evidence ; but the court overruled the objection and allowed the witness to detail the entire conversation, to which plaintiff excepted.    Said Hinson then testified that in said conversation he told plaintiff that he had paid the note ; that plaintiff replied he had not paid it to her, and no one else had any right to collect it, as she had it ; and that he replied to this that said intestate had told him to pay it to L. Bear & Co.; that he had once offered to pay said intestate $236 on the note in the store of L. Bear & Co., and he refused to receive the money, and told him to go into the counting-room and pay the money to Leo Frank, where it belonged, and take a receipt for it, and that he would bring the papers to Frank ; that said decedent had often told him to pay the money on the note, when due, to L. Bear & Co., and that he had so paid it, $236 before said decedent's death, and the balance after his death.    All of this, the witness said, was the conversation between him and the plaintiff, as to which she had testified, and it was, in substance, all the conversation. The plaintiff objected to this conversation, and moved to exclude the same from the jury, as irrelevant, illegal, and tending to mislead ; and because, also, it was an attempt, in an illegal way, to get before the jury transactions with and statements by decedent to a party to the suit, thus offering him-

self to prove them. To this defendants replied that the evidence was offered for no such purpose ; that it was competent, because it was a conversation betwen plaintiff and defendant, relative to the subject matter of the suit, and because plaintiff had testified about it without objection, and defendants should have the same right. The court overruled the plaintiff's objection, and permitted said Hinson to testify to said conversation, and it went before the jury without qualification or explanation by the court ; but no explanation or qualification was asked by the plaintiff, either by a charge to the jury or otherwise, the court deciding that, under the circumstances, it was competent for the defendant to prove the whole conversation.

" The defendants then introduced Leo Frank as a witness, who testified that he was a member of the firm of L. Bear & Co. during the whole time covered by the transactions involved in this suit, and was still a member ; that said firm had indemnified defendant Hinson against the costs of this suit, on the condition that said Hinson would defend the same ; also, that he wrote the said note, and the mortgage to secure it, and saw them both executed, and had the mortgage proved and recorded ; that there had been dealings between said firm and Dr. Stallings for a long time, and mutual confidence existed between them ; that they were not strict in their dealings with each other ; that Dr. Stallings was indebted to said firm, at the time said note and mortgage were given, for money loaned, and for goods and groceries sold, to the amount of over four hundred dollars, which was afterwards increased several hundred dollars, and, at the time of his death, amounted to between seven and eight hundred dollars ; that two hundred dollars of this amount was for money loaned at one time, a short while before his death, and other sums were loaned to him by said firm after the execution of the note sued on. Defendants then asked said witness what took place between him and Dr. Stallings at the time of the execution of said note, in regard to its collection at maturity, and what should be done with the proceeds. The plaintiff objected to this question, on the ground that the witness, though not a nominal, was a real party to the suit, and, therefore, was incompetent to testify to any transaction with or statement by the intestate. The court overruled the objection, and permitted the question to be asked, on the ground that the witness, not being a party to the suit, nor one of the makers of the note sued on, was not incompetent under section 2704 of the Revised Code ; to which ruling the plaintiff excepted. Said witness then stated that, at the time said note and mortgage were executed and handed to him, Dr. Stallings authorized him to collect the note, and to apply the proceeds to the pay-

ment of his indebtedness to L. Bear & Co. Plaintiff objected to this answer, and moved to exclude it from the jury; but the court overruled the objection, and plaintiff excepted. Said witness further testified that Dr. Stallings, when he borrowed two hundred dollars from L. Bear & Co., a few days before his death, remarked that they were safe in the matter of his indebtedness to them, as they were authorized to collect said note and apply it to his indebtedness, and that the note would be paid by Hinson in a few days. The plaintiff objected to this evidence, on the ground before stated; but the court overruled the objection, and allowed the evidence to go to the jury, to which plaintiff excepted."

In reference to the delivery of the portfolio to the plaintiff, said Leo Frank testified as follows: " A few days after the death of Dr. Stallings, plaintiff drove up to the door of L. Bear & Co.'s store, and sent in for his portfolio; and Mr. Gandy, one of the said firm, asked witness for it, to hand to her. Witness took the portfolio out of the safe, and, before handing it to Mr. Gandy, said, ' We ought not to deliver it to her, as there are papers in it' — meaning the said note and mortgage — ' on which we have advanced money, and are authorized to collect.' The portfolio was locked, and L. Bear & Co. did not have the key, and could not take out the said note and mortgage. Mr. Gandy replied, 'Never mind; it would be indelicate to say anything about this to the widow so soon after her husband's death. I will deliver the portfolio to her, and see her about it hereafter, and get the papers from her, and all will be right.' Plaintiff was not near enough to hear this conversation, as she was sitting in a buggy before the door of the store." The plaintiff objected to this evidence, and moved to exclude said conversation from the jury; but the court overruled the objection, "and permitted the evidence to go to the jury, on the ground that it was a part of the act of the delivery of the portfolio to the plaintiff, and explanatory of the delivery ;" to which ruling the plaintiff excepted.

The several rulings of the court on the evidence, to which exceptions were reserved by the plaintiff, are now assigned as error.

HERBERT & BUELL, for appellant.

JUDGE & HOLTZCLAW, *contra*.

B. F. SAFFOLD, J. — The appellant, as administratrix of her husband, sued the appellees, Hinson and Lewis Bear, on a promissory note made by them payable to her intestate. The complaint also contained a count on an account stated. The defendants by sworn plea denied that the note was the prop-

erty of the plaintiff, and asserted that it belonged to L. Bear & Co. They also pleaded payment, and the general issue. The merit of the defence was, that Hinson, the principal debtor, paid the amount of the note to L. Bear & Co., at the request and on the authority of the intestate. The larger portion was claimed to have been paid before his death, and the balance afterwards. The conversation between the plaintiff and Hinson, which was detailed, was inadmissible against the objection of the opposite party, so far as it embraced what the decedent had said relative to whom the money was to be paid, or by whom it might be collected. The incompetency includes, also, the statement of his presence when the first payment was made to Bear & Co.; because the purpose of stating it was to give emphasis to the payment, as made under his authority. He would be precluded from setting up a right to recover money which, in his presence, and of course with his concurrence, was paid to another party for his use.

2. Leo Frank was a member of the firm of Bear & Co., as was Lewis Bear, one of the defendants. This firm had indemnified Hinson on account of his payment of the money to them. Frank, as a witness, was within the prohibition of the examination of a party, " as to any transaction with, or statement by, the testator or intestate, unless called to testify thereto by the opposite party." R. C. § 2704. For, though he was not a party to the record, he was directly interested in the judgment to be rendered, by reason of the indemnity given to Hinson by the firm of which he was a member. The basis of the incompetency of a party is his interest. The proper construction of section 2704 of the Revised Code is, that it does not change the former rule of evidence so far as any transactions with or statement by the decedent is concerned, in respect to the incompetency of witnesses on account of being a party or interested in the issue tried, in suits or proceedings by or against executors or administrators, unless the witness is called to testify thereto by the opposite party. As Frank would not have been a competent witness on these points by the previous law, he is not so under section 2704.

3. The conversation between Frank and Gandy about the portfolio, when the plaintiff called for it, not having been in her presence, is no part of the res gestœ. The portfolio at that time was only temporarily in their possession, and so secured that they could not get access to its contents. The conversation was not explanatory of their possession.

The charges given and refused are so dependent upon the evidence improperly admitted, that it is not necessary to consider them.

The judgment is reversed, and the cause remanded.